UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN 5, LLC,

    Plaintiff,

v.

TOWNSHIP OF MONROE,

    Defendant.
_____/

Case No. 24-cv-11313

Hon. Sean F. Cox
United States District Court Judge

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT (ECF No. 13) AND DENYING PLAINTIFF'S MOTION**
**FOR SUMMARY JUDGMENT (ECF No. 15)**

Plaintiff American 5, LLC alleges that Defendant Charter Township of Monroe violated the Takings Clause and state law when it revoked prior approval for Plaintiff to construct and operate a marijuana business on land Plaintiff owned within the Township. Both parties now seek summary judgment on Plaintiff's takings claim, and the Township additionally seeks summary judgment on Plaintiff's state-law claim. Plaintiff effectively abandons its state-law claim, so the Court shall grant summary judgment for the Township on that claim. But the parties genuinely dispute whether the Township revoked prior approval for Plaintiff's marijuana use, and therefore neither party is entitled to summary judgment on Plaintiff's takings claim.

**BACKGROUND**

On June 23, 2020, the State of Michigan sent an entity called High Five Farms, LLC a letter stating that "[t]he Marijuana Regulatory Agency . . . considered your partial application for prequalification status and determined that you have prequalification status."[1] (ECF No. 15-4, PageID.333).

---

[1] The Township argues that this letter is inadmissible (ECF No. 18, PageID.429–30), but the Court declines to resolve this issue because this letter does not help Plaintiff in any event.

1

In August 2020, the Township adopted an ordinance to permit the commercial sale of marijuana for recreational consumption within its borders. Persons who wished to construct and operate a marijuana business under the August 2020 ordinance had to submit the following materials to the Township: (1) a "Marihuana Business application"; (2) a "Special Land Use application"; (3) a "Site Plan Review application"; (4) "[w]ritten permission from the property owner (if the applicant is not property owner) to have a marijuana business on the property"; (5) a "[n]otarized [a]cknowledgement of operational requirements"; (6) a "liability release waiver"; (7) "[p]roof of [i]nsurance or [a] [l]etter of [i]ntent"; and (8) "[p]requalification approval from the State of Michigan."[2] (ECF No. 13-2, PageID.117–18).

Sometime after the Township passed the August 2020 ordinance, Plaintiff acquired an interest in a property within the Township located at 1235 South Monroe Street. Plaintiff planned to construct and operate a marijuana business on that property in partnership with an entity called Quality Roots, Inc., and Plaintiff planned to lease the property to Quality Roots.

On October 1, 2020, the Township received a document entitled "Application for Special Approved Use" as well as a document entitled "Site Plan Application." Plaintiff offers copies of these documents, and they list James S. Jacobs Architects, PLLC ("JSJA") as the "Applicant"; "Quality Roots, Inc. Provisioning & Adult Use Retail Center" as the "proposed use" and "proposed development," respectively; 1235 South Monroe as the "Site Address"; and Plaintiff as the "property owner." (ECF No. 15-1, PageID.314, 315). And both documents are signed only by JSJA and Plaintiff's owner, Jonathan McCarty.[3] (*Id.*).

---

[2] What "prequalification approval from the State of Michigan" entailed is unclear.
[3] The Application for Special Approved Use and the Site Plan Application documents do not discuss marijuana.

2

The Township also received a so-called "Marihuana Business application" on October 1, 2020. (ECF No. 13-2, PageID.94). The Township offers the materials it received in connection with this Marihuana Business application, including two documents that are materially identical to the Application for Special Approved Use and the Site Plan Application that Plaintiff offers.[4] (ECF No. 13-2, PageID.105, 106). This Marihuana Business application also included: (1) written permission from Plaintiff to have a marijuana business at 1235 South Monroe; (2) a notarized acknowledgement of operational requirements signed by two individuals (Aric and Jonathan Klar) on behalf of Quality Roots; (3) a liability release waiver signed by an individual (Michael Klar) on behalf of Quality Roots; (4) a document stating that Quality Roots had obtained an insurance quote; and (5) a document stating that Quality Roots had prequalification approval from the State of Michigan.[5] (*Id.* at 103–04, 107–12).

The Court refers to the Application for Special Approved Use and the Site Plan Application that Plaintiff offers and the Marihuana Business Application that the Township offers as the "Use Application." Plaintiff argues that the Use Application sought permission for it to construct and operate a marijuana business, and the Court refers to this conduct as the "Marijuana Use." The Township agrees that the Use Application sought permission for the Marijuana Use at 1235 South Monroe, but the Township maintains that Quality Roots was the putative Marijuana User. In any event, the parties agree that the Use Application sought permission to perform the Marijuana Use at 1235 South Monroe.

---

[4] Plaintiff argues that the Marihuana Business application the Township offers differs in some respect from the Application for Special Approved Use and the Site Plan Application that it offers. (ECF No. 19, PageID.511). But Plaintiff does not dispute that the Township received the Marihuana Business application on October 1, 2020.

[5] Like High Five Farms's June 2020 prequalification letter, Quality Roots's prequalification letter states that "[t]he Marijuana Regulatory Agency . . . considered your partial application for prequalification status and determined that you have prequalification status." (ECF No. 13-2, PageID.109, 110).

As relevant here, another Township ordinance states as follows: "Special Land use approval runs with the land.  As long as the use remains approved, a change of tenant or owner will not affect the special approval.  An expansion of use or change of the use shall require new special use approval." (ECF No. 15-5, PageID.343).  That ordinance also states that "[t]he owner of an interest in land for which site plan approval is sought and/or the owner's designated shall submit a completed [site-plan approval] application." (*Id.* at 336).

Before the Township considered the Use Application, it imposed a moratorium on new Marijuana Uses on November 4, 2020.  The Township's community development director and zoning enforcement officer, Kimberly Fortner, then sent a letter dated November 10, 2020, to McCarty and Aric, Jonathan, Michael, and Mark Klar.  Fortner's letter states that the August 2020 ordinance is void *ab initio* for lack of publication and "[t]he Township will be working to adopt a new marihuana ordinance that is similar to the last." (ECF No. 13-2, PageID.121).  Fortner's letter concludes, "You have two options: (1) you may suspend your application until an Ordinance is passed, provided that the Township agrees that it will honor the order in which you were on the agenda; or (2) you may withdraw your application." (*Id.*).

McCarty then sent a response letter dated November 11, 2020, and McCarty's response states that it is "FROM" McCarty and Aric, Jonathan, Michael, & Mark Klar. (ECF No. 13-2, PageID.123; ECF No. 15-6, PageID.347).  McCarty's letter continues, "The owner/applicant accepts your 'option 1' and shall suspend the application while awaiting adoption of the revised ordinance." (*Id.*).  And McCarty's letter is signed only by him.  The Township suspended the Use Application in response to McCarty's letter.

4

The Township later passed a new marijuana-business ordinance[6] and then took up the Use Application at a Planning Commission meeting on November 8, 2021. At that meeting, the Commission considered two motions:

> Motion #2. Motion . . . to approve the request of James Jacobs, James Jacobs Architects / American 5 LLC, 1235 & 1241 South Monroe Street, Monroe, Michigan, Property I.D. #5812-020-205-00 and #5812-020-204-00 for Special Land Use approval to include a marihuana provisioning center and adult use retailer, and to add parking after demolition of an existing vacant building, all within a C-2 (General Commercial) Zoned District, *contingent upon Site Plan approval*.
> . . . .
>
> Motion #3. Motion . . . to approve the request of James Jacobs, James Jacobs Architects / American 5 LLC, 1235 & 1241 South Monroe Street, Monroe, Michigan, Property I.D. #5812-020-205-00 and #5812-020-204·00 for Site Plan approval to include a marihuana provisioning center and adult use retailer, and to add parking after demolition of an existing vacant building, all within a C-2 (General Commercial) Zoned District, the sign name Buddi, defer sidewalk until connection plan is in place, grass around detention basin is sufficient, *contingent upon meeting the terms of the Township Engineer's letter dated October 28, 2021 [excluding comment 3 (defer sidewalk until connection plan is in place)] and the Township Planner's letter dated October 15, 2021 [excluding recommendation K (grass is sufficient), L (proposed architecture for building is sufficient)] on a revised site plan, approval from the Township Fire Inspector, and approvals from all affected agencies*.

(ECF No. 13-2, PageID.127, 128 (brackets in original); ECF No. 15-2, PageID.323, 324 (brackets in original)). The Commission passed both these motions at the November 8, 2021, meeting.

The Township later received a letter from Aric Klar dated October 10, 2022, and Klar's letter is on Quality Roots letterhead and is signed only by Klar. Klar's letter states, "We, Quality Roots, Inc. . . . along with our local partner Jonathan McCarty of American 5 LLC . . . , are

---

[6] The Township's new ordinance provided that any applications seeking permission for the Marijuana Use that had been placed on the agenda of the Township's Planning Committee before the August 2020 ordinance had been declared void *ab initio* would still be considered, but any new Marijuana Use applications would not be.

5

writing to respectfully request an extension of our approval dated November 8, 2021, for a medical Provisioning Center and Adult Use Retail Establishment at 1235 South Monroe."[7] (ECF No. 13-2, PageID.133). Klar's letter continues, "We would further appreciate it if we can have the matter added to the Agenda for the upcoming October 18, 2022 Board meeting." (*Id.*). Klar's letter also explains that "any delay in our project was not intentional or to pursue other opportunities in other markets first, rather our delay was related to pursuing another project within your township first at 1121 South Monroe." (*Id.*). Klar's letter concludes, "Now that our first store is successfully operating and all the Township requirements have been met, we have allocated our resources and attention to the second project at 1235 South Monroe where we have $1.5 Million set aside for this development." (*Id.*).

A few weeks later, the Township received a second letter from Aric Klar dated October 31, 2022, and Klar's second letter is also on Quality Roots letterhead and signed only by Klar. Klar's second letter states, "We, along with our local partner Jonathan McCarty of American 5 LLC, are writing to respectfully request an extension of our site plan approval dated November 8, 2021, for a medical Provisioning Center and Adult Retail Use Establishment at 1235 South Monroe."[8] (*Id.* at 135). Klar's second letter also states that an extension is sought "[f]or the same reasons as communicated to the Township Board in our recently approved request for extension of the use permit."[9] (*Id.*). And Klar's second letter asks the Township to consider this request at "the upcoming December 5, 2022 Planning Commission meeting." (*Id.*).

---

[7] Why such an extension was necessary is unclear.
[8] Again, it is unclear why such an extension was necessary.
[9] Neither party offers a record of the Commission's approval of the extension Klar requested in his first letter. And the difference, if any, between the extensions requested by Klar's first and second letters is unclear.

The Planning Commission held a meeting on December 5, 2022, where it considered and passed the following motion:

> Motion #3. Motion . . . to approve the request of Aric Klar, Quality Roots Inc. / American 5 LLC, 1235 South Monroe Street, Monroe, Michigan, Property I.D. #5812-020-205-01, for Site Plan approval extension for Quality Roots Inc. (Buddi), all within the C-2 (General Commercial) Zoned District, for one year (until November 8, 2023) as long as the Township Board's conditions are met by Quality Roots Inc DBA Buddi for its extension approval to become a state licensee.[10]

(*Id.* at 139).

On January 17, 2023, McCarty emailed Fortner, "If QR does not perform at the 1235 S monroe street location, what options would American 5 be left with? I understand any cannabis business would be out. Would those buildings be able to be used for general commercial where special use is not required?" (*Id.* at 166). Fortner responded, "1235 could be used commercially without special use for," among other things, "a professional office, a personal service establishment," and "non marihuana retail." (*Id.*). Fortner also stated, "It could be turned into a church, library, funeral home, or automotive repair garage (minor) with site plan approval from the Planning Commission." (*Id.*).

McCarty later met with Fortner on September 27, 2023. At that meeting, McCarty told Fortner "that Quality Roots, Inc. was not going forward with the marijuana business at 1235 S. Monroe St." (*Id.* at 98). McCarty also told Fortner "that he wanted to make a request to the Township Board to ask for American 5, LLC to be granted an extension to become a State Licensee at 1235 S. Monroe St. because Quality Roots, Inc.'s extension approval was going to expire on November 7, 2023." (*Id.*). McCarty also gave Fortner a document "purport[ing] to

---

[10] Neither party explains this "state licensure" requirement or the extent to which (if any) it differs from the Township's state prequalification requirement under the August 2020 ordinance.

7

assign Quality Roots, Inc.'s Special Land Use and Site Plan Approval to" Plaintiff. (*Id.*; *see also id.* at 154–58).

Fortner responded that Plaintiff "could not be assigned Quality Roots, Inc.'s approval" for two reasons: (1) "because "Quality Roots, Inc. never obtained the provisioning license or the adult use retailer license for 1235 S. Monroe St, so there was no license to transfer"; and (2) because "McCarty admitted that American 5, LLC had no prequalification approval from the State of Michigan." (*Id.* at 98). Plaintiff accordingly did not attempt to perform the Marijuana Use at 1235 South Monroe. The Township's ordinances were later amended in June 2023, and consequently "no new Recreational (Adult Use) or Medical Marihuana Facilities are permitted within Monroe Charter Township." (*Id.* at 99). This action followed in May 2024.

Plaintiff pled that the Township violated the Takings Clause (Count I) and the Michigan Zoning Enabling Act ("MZEA") (Count II) when it "denied Plaintiff's rights to construct and operate a provisioning and adult use retail center" at 1235 South Monroe.[11] (ECF No. 1, PageID.6). Discovery closed in December 2024, and Plaintiff now moves for summary judgment on its takings claim. The Township, for its part, moves for summary judgment on Plaintiff's takings and state-law claims.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). And parties genuinely dispute material facts if, "taking the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, 'a reasonable jury could return a verdict for the nonmoving party.'" *DeVore v. Univ. of Ky. Bd. of*

---

[11] The Court considers Plaintiff's construction and operation of an adult retail use center to be coextensive with the Marijuana Use.

8

*Trs.*, 118 F.4th 839, 844 (6th Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). But "[t]he fact that one party fails to satisfy [his] burden on his own [summary-judgment] motion does not automatically indicate that the opposing party has satisfied its burden and should be granted summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720 (4th ed. June 2024 Update)). Thus, "cross-motions [for summary judgment] must be considered separately." *Id.*

## ANALYSIS

**I.      Subject-Matter Jurisdiction Over Plaintiff's Takings Claim**

As a preliminary matter, the Township argues that, per *Ansell v. Delta County Planning Commission*, Plaintiff lacks standing for its takings claim because it cannot prove "special damages." 957 N.W.2d 47, 52 (Mich. Ct. App. 2020). The *Ansell* court discussed the MZEA's requirement that "[a] party aggrieved by the decision" of a local zoning board of appeals "may appeal to the circuit court for the county in which the property is located." Mich. Comp. Laws Ann. § 125.3605 (West 2012).

*Ansell* explained that a plaintiff lacks statutory standing under MZEA unless he or she "allege[s] and prove[s] that he or she has suffered some *special damages* not common to other property owners similarly situated." 957 N.W.2d at 51 (emphasis added) (quoting *Olsen v. Chikaming Township*, 924 N.W.2d 889, 899 (Mich. Ct. App. 2018), *overruled in part by Saugatuck Dunes Coastal All. v. Saugatuck Township*, 983 N.W.2d 798 (Mich. 2022)). But *Ansell* did not discuss Article III standing, which is all that matters with respect to Plaintiff's takings claim. Thus, the Court has subject-matter jurisdiction over Plaintiff's takings claim.

9

## II. Plaintiff's Summary-Judgment Motion

Plaintiff seeks summary judgment on its takings claim.[12] The Takings Clause states that "private property" shall not "be taken for public use, without just compensation," U.S. Const. amend. V, and Plaintiff argues that the Township took its property without just compensation under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). As relevant here, *Penn Central* discussed factors relevant to whether a governmental regulation that did not destroy "'all economically beneficial uses' of [a] property" violates the Takings Clause. *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455 (6th Cir. 2009) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992)). Those factors are: (1) "the nature of the governmental action"; (2) "the economic impact of the regulation"; and (3) "the law's degree of interference with distinct investment-backed expectations." *Id.* at 456–57. Plaintiff contends that all three *Penn Central* factors weigh in its favor.

### A. The First *Penn Central* Factor

Courts assess the first *Penn Central* factor—the character of the challenged governmental action—by asking whether such action was more like "a physical invasion by government" than "some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 U.S. at 124. Plaintiff argues that the Township's withdrawal of prior approval for Plaintiff to perform the Marijuana Use at 1235 South Monroe was more like a physical taking because it "depriv[ed] [Plaintiff] of [its] lawful right to" perform the Marijuana Use at 1235 South Monroe." (ECF No. 15, PageID.309). The Township denies that it ever

---

[12] Plaintiff cited a few more materials in its response to the Township's summary-judgment motion than it cited in its own summary-judgment motion. (*See* ECF Nos. 19-2, 19-3, 19-7, 19-6). But courts consider cross-motions for summary judgment separately, so the Court only considers the materials that Plaintiff cited in its summary-judgment motion to resolve whether it carries its initial burden under Rule 56.

10

permitted Plaintiff to perform the Marijuana Use at 1235 South Monroe, much less revoked such permission.[13] According to the Township, it only ever permitted Quality Roots to perform the Marijuana Use at 1235 South Monroe.

Plaintiff argues that the Township is wrong for a few reasons. *First*, Plaintiff points to the Use Application and the language from the Township's ordinances stating that applications for site-plan approval shall be submitted by a property owner or his agent. The Use Application indeed identifies Plaintiff as the owner of 1235 South Monroe, and therefore Plaintiff could prove that it submitted parts of the Use Application. But the Use Application also included several additional documents which the August 2020 ordinance required prospective Marijuana Users to provide, and none of those additional documents refer to Plaintiff. Thus, even if Plaintiff submitted parts of the Use Application, the Use Application and the Township's rules regarding who submits applications for site-plan approval do not show that the Use Application sought permission for *Plaintiff* to do anything.

*Second*, Plaintiff relies on the fact that the Township suspended the Use Application in response to McCarty's November 2020, letter. But McCarty's letter states that it is "FROM" Plaintiff's *and* Quality Roots's owners. McCarty's letter also responds to Fortner's letter, and Fortner's letter is addressed to Plaintiff's *and* Quality Roots's owners. And the Township also took action on the Use Application in response to Klar's October 2022 letters. McCarty's letter is thus consistent with the Township's position that the Use Application sought permission for Quality Roots, and not Plaintiff, to perform the Marijuana Use.

---

[13] The Township apparently concedes that if it did revoke prior approval for Plaintiff to perform the Marijuana Use at 1235 South Monroe, then the first *Penn Central* factor would weigh in Plaintiff's favor.

11

*Third*, Plaintiff points to the November 2021 Planning Commission meeting where the Commission addressed the Use Application. Plaintiff apparently believes this meeting is probative of whether the Township permitted it to perform the Marijuana Use because the minutes of that meeting state that the Commission approved requests by JSJA and Plaintiff. But the Commission also addressed the Use Application at its December 2022 meeting, and the minutes of *that* meeting refer to requests by Plaintiff *and Quality Roots*. Thus, the minutes of the November 2021 Commission meeting are not inconsistent with the Township's position.

*Fourth*, Plaintiff points to the language from the Township's ordinances stating that "Special Land use approval runs with the land," and, "As long as the use remains approved, a change of tenant or owner will not affect the special approval." But this language is vague enough that a reasonable juror who construed the record in the light most favorable to the Township would find that the only relevant "Special Land use" the Township ever approved was Quality Roots's performance of the Marijuana Use. Such a juror would therefore conclude that the only permitted use of 1235 South Monroe that attached to Plaintiff's real-property rights was by Quality Roots's performance of the Marijuana Use.

*Fifth* and last, Plaintiff cites the June 2020 letter granting High Five Farms state prequalification. According to Plaintiff, this letter matters because the Township should have allowed it to replace Quality Roots with a new tenant such as High Five Farms after Quality Roots withdrew from the project at 1235 South Monroe. And Plaintiff states that this substitution would not have been difficult because it shares owners with High Five Farms. But if the Township only ever permitted Quality Roots to perform the Marijuana Use at 1235 South Monroe, then the Township's refusal to allow Plaintiff to replace Quality Roots with High Five Farms would not help Plaintiff prove that the first *Penn Central* factor weighs in its favor.

In sum, the parties genuinely dispute whether the Township ever permitted Plaintiff to perform the Marijuana Use at 1235 South Monroe in the first place, and therefore they genuinely dispute whether the Township later revoked such permission. The first *Penn Central* factor accordingly does not weigh in Plaintiff's favor.

### B. The Second and Third *Penn Central* Factors

Plaintiff argues that the second and third *Penn Central* factors also weigh in its favor, but Plaintiff does *not* argue that this is sufficient to show that the Township violated the Takings Clause as a matter of law. In other words, Plaintiff relies on the combined weight of all three *Penn Central* factors to make its case. The Court therefore declines to address whether the second and third *Penn Central* factors weigh in Plaintiff's favor.

Plaintiff is not entitled to summary judgment on its takings claim.[14]

### III. The Township's Summary-Judgment Motion

#### A. Plaintiff's Takings Claim

The Township argues that it is entitled to summary judgment on Plaintiff's takings claim because Plaintiff cannot prove that it lost a vested property right. In support of this argument, the Township relies on cases where plaintiffs claimed that Michigan municipalities had deprived them of property without due process of law in violation of the Due Process Clause. *See Silver v. Franklin Township*, 966 F.2d 1031 (6th Cir. 1992); *G.M. Eng'rs & Assocs., Inc. v. West Bloomfield Township*, 922 F.2d 328, 331 – 32 (6th Cir. 1990). Here, however, Plaintiff pled that the Township took its property without just compensation in violation of the Takings Clause. Thus, this challenge to Plaintiff's takings claim fails.

---

[14] Plaintiff's reply brief also makes allusions to the Due Process Clause, but Plaintiff pled a takings claim and not a due-process claim. (*See* ECF No. 1, PageID.2 ("This Court has jurisdiction under 28 U.S.C. § 1331, because the claims arise under the Takings Clause of the Fifth Amendment of the United States Constitution.")).

The Township argues in the alternative that all three *Penn Central* factors weigh against Plaintiff. And the Township argues that the first *Penn Central* factor weighs against Plaintiff for three reasons. *First*, because "any entity applying for a Marijuana Business Licenses [sic] under the Ordinance was required to have prequalification from the state of Michigan."[15] (ECF No. 13, PageID.81). But the Township does not explain why the prequalification requirement is germane to the first *Penn Central* factor. The prequalification requirement might be relevant to the first *Penn Central* factor if Plaintiff was ineligible to perform the Marijuana Use because it lacked prequalification, but the Township offers no evidence showing as much.[16] The existence of the prequalification requirement to which the Township refers accordingly does not show that the first *Penn Central* factor weighs against Plaintiff.

*Second*, the Township states that "[a]ll applicants were subject to the provisions of the Ordinance."[17] (ECF No. 13, PageID.81). That may be true, but Plaintiff responds that the Township uniquely burdened it by revoking prior approval for its performance of the Marijuana Use at 1235 South Monroe. Again, the fact that the Township's ordinances applied equally to all prospective Marijuana Users might be relevant to the first *Penn Central* factor if Plaintiff was ineligible to perform the Marijuana Use, and the only grounds for such ineligibility that the

---

[15] It is unclear whether the "Ordinance" to which the Township refers is the August 2020 ordinance or the new marijuana-business ordinance that the Township enacted after it realized that the August 2020 ordinance was void *ab initio*.

[16] Indeed, the Township's assertion in its statement of facts that Plaintiff "did not have prequalification from the State of Michigan" is not accompanied by any citation to the record. (ECF No. 14, PageID.216). The Township's summary-judgment motion contains the same language, also without citation to the record. (ECF No. 13, PageID.70). And the Township does not argue that Plaintiff cannot prove that it had state prequalification. *See* Fed. R. Civ. P. 56(c)(1)(B) (explaining that a party seeking summary judgment can establish that the parties do not genuinely dispute a fact by pointing out "that an adverse party cannot produce admissible evidence to support the fact").

[17] Again, the ordinance to which the Township refers here is unclear.

Township brings up is Plaintiff's lack of state prequalification. But again, the Township fails to show that every reasonable juror would agree that Plaintiff lacked such prequalification.

*Third*, the Township asserts that "Plaintiff never had a Special Land Use Permit or a Site Plan Approval, only Quality Roots, Inc., did, and Quality Roots, Inc., allowed that Special Land Use Permit and Site Plan Approval to lapse." (*Id.* at 81–82). Plaintiff disagrees. As support for their competing positions, the parties largely rely on the same proofs that the Court surveyed above to resolve Plaintiff's summary-judgment motion. And, as discussed above, a reasonable jury that construed those proofs in the light most favorable to the Township would not conclude that the first *Penn Central* factor weighs in Plaintiff's favor.

Whether a reasonable jury that construed the record in the light most favorable to *Plaintiff* would do the same is a closer call. But the language from the Township's ordinances stating that "Special Land use approval runs with the land," and "As long as the use remains as approved, a change of tenant or owner will not affect the special approval," tips the scales in Plaintiff's favor. A reasonable juror that construed this language, the Use Application, McCarty's letter, and the minutes of the November 2021 Planning Commission meeting in the light most favorable to Plaintiff would conclude that the Township permitted Plaintiff to perform the Marijuana Use at 1235 Monroe, and that such permit attached to Plaintiff's real-property rights. Such a jury would accordingly find that Quality Roots's withdrawal from the project at 1235 South Monroe did not affect Plaintiff's permit.

In sum, the Township fails to show that the first *Penn Central* factor weighs against Plaintiff. And like Plaintiff, the Township also relies on the combined weight of all three *Penn Central* factors to make its case. The Court accordingly declines to address whether the second and third *Penn Central* factors weigh against Plaintiff.

The Township is not entitled to summary judgment on Plaintiff's takings claim.

### B. Plaintiff's MZEA Claim

The Township argues that it is entitled to summary judgment on Plaintiff's MZEA claim for a few reasons,[18] and Plaintiff does not address any of the Township's arguments. Indeed, Plaintiff's response to the Township's summary-judgment motion makes no reference at all to its MZEA claim. The Township is thus entitled to summary judgment on Plaintiff's MZEA claim.

### CONCLUSION & ORDER

The parties dispute facts material to Plaintiff's takings claim, and Plaintiff abandons its state-law claim. Accordingly, **IT IS ORDERED** that the Township's summary-judgment motion (ECF No. 13) is **GRANTED** to the extent that it seeks summary judgment on Count II and **DENIED** in all other respects. **IT IS FURTHER ORDERED** that Plaintiff's summary-judgment motion (ECF No. 15) is **DENIED**.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: March 24, 2025

---

[18] The Township does *not* repeat the jurisdictional challenge that it raised to Plaintiff's takings claim in connection with Plaintiff's MZEA claim.